1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Edwin Herbert Hundsdorfer,**<br>Petitioner<br>-vs-<br>**Robert Stewart, et al.,**<br>Respondents | CV-08-0251-PHX-DGC (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 7, 2008 (#1).  On September 17, 2008, Respondents filed their Answer (#13). Petitioner filed a Reply on September 25, 2008 (#16).

In the interim, Petitioner filed a Motion for Entry of Default and Motion for Default Judgment (#10), and Motion for Judgment (#14), and Respondents filed a Motion to Set Aside Entry of Default (#12) and a Motion to Deny Motion for Judgment (#14).

The Petitioner's Petition and the various motions concerning default are now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Petitioner challenges his custody pursuant to a 1999 conviction and 2003 sentence upon revocation of probation for attempted sexual conduct with a minor, and pursuant to a

1   2003 conviction and sentence for failure to register as a sex offender.

2

3   **A. FACTUAL BACKGROUND**

4        Based upon a 1999 guilty plea to one count of Attempted Sexual Conduct with a

5   Minor with agreed lifetime probation.  (*See* Exhibit A, 1999 Plea Agreement.)  (Exhibits to

6   the Answer, #13, are referenced herein as "Exhibit ___.")  On May 30, 2003, Petitioner

7   entered into a plea agreement (Exhibit B) in which he agreed to plead guilty to failure to

8   register as a sex offender, On August 5, 2003, Petitioner was sentenced to a presumptive term

9   of 2.5 years in prison on the failure to register.  (Exhibit C)

10        Eventually his probation on the 1999 conviction was revoked and he was sentenced

11   to a presumptive term of 10 years.  (Answer #13 at 2; Petition, #1 at 1-2.)

12

13   **B. PROCEEDINGS ON DIRECT APPEAL**

14        Petitioner did not file any direct appeal.  (Petition, #1 at 2.)

15

16   **C.  PROCEEDINGS ON POST-CONVICTION RELIEF**

17        **First PCR Proceeding** -  Petitioner filed his first Notice of Post-Conviction Relief

18   on September 23, 2003 (Exhibit D), and his PCR Petition on June 30, 2004, attacking both

19   of his sentences.  Petitioner asserted two grounds for relief, including:

20        (1)     the failure to give him credit for time served on probation was a violation of

21                the federal Sentencing Reform Act of 1984;

22        (2)     he had not been provided the pre-sentence report in a timely manner;

23        On September 20, 2004, the trial court summarily dismissed the petition for failure

24   to raise a colorable claim.  (Exhibit F.)  Petitioner sought review by the Arizona Court of

25   Appeals (Exhibit H) and the Arizona Supreme Court.  The Arizona Court of Appeals denied

26   review on August 16, 2005, and the Arizona Supreme Court denied review on January 23,

27   2006.  (Exhibit G.)

28        **Second PCR Proceeding** -  On September 2, 2004, during the pendency of his first

1  PCR proceeding, Petitioner filed his second Notice of Post-Conviction Relief.  (Exhibit I.)

2  The notice asserted a "significant change in the law" under "House Bill 2452" and "the

3  Superior Court ruling of Arizona v. Davis." (*Id.* at 3.)  No PCR petition was filed and no

4  separate order issued on the basis of this notice.  (Answer, #14 at 2-3.)

5       **Third PCR Proceeding** -  On March 21, 2006, after the denial of review in his first

6  PCR proceeding, Petitioner filed his third Notice of Post-Conviction Relief (Exhibit J),

7  asserting changes in the law based on, *inter alia, Apprendi v. New Jersey*, 530 U.S. 466

8  (2000).  That proceeding was summarily dismissed by the trial court on April 3, 2006 based

9  on Arizona's preclusion bar, because the relied upon cases predated his sentences.  (Exhibit

10  K.)  Petitioner did not seek review of that decision by the state appellate courts.

11       **Fourth PCR Proceeding** -  Petitioner filed his fourth Notice of Post-Conviction

12  Relief on November 8, 2006.  (Exhibit L.)  He alleged ineffective assistance of PCR and trial

13  counsel, and a violation of *Blakely v. Washington*, 542 U.S. 296 (2004).  That proceeding

14  was dismissed on November 20, 2006 on the basis that his ineffective assistance of counsel

15  claims were precluded by failure to raise them in earlier proceedings, and his claim under

16  *Blakely* was without merit because he had been sentenced to presumptive terms.  Thereafter,

17  Petition filed a Petition for Review (Exhibit N), which was denied on November 2, 2007

18  (Exhibit O).

19

20  **E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

21       **Petition** - Petitioner commenced the present proceeding by filing his Petition for Writ

22  of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 7, 2008 (#1).  Petitioner asserts

23  three grounds for relief:

24       (1)   his due process rights were violated when the sentencing court failed to take

25            account of mitigating factors presented at sentencing;

26       (2)   the failure to give him credit for time served on probation was a violation of

27            the federal sentencing guidelines; and

28       (3)   To the extent that it denies credit for time served on probation, Ariz. Rev. Stat.

§ 13-901(A) violates the 1984 Sentencing Reform Act as interpreted by the U.S. Supreme Court.

**Answer** - Respondents' Answer (#13) argues that Petitioner's petition is untimely, his claims unexhausted and procedurally defaulted, and without merit.

**Reply** - Petitioner's Reply (#16) argues that Respondents waived their defenses by failing to file a timely Answer.

**Default Proceedings** - On July 3, 2008, the Court granted Respondents' Motion for Extension of Time (#8), and gave Respondents until August 22, 2008 to respond to the Petition. Respondents did not do so, and on September 9, 2008, Petitioner filed his Motion for Entry of Default and Motion for Default Judgment (#10). On September 15, 2008, the Clerk of the Court entered default against Respondents (#11).

On September 15, 2008, Respondents filed their Motion to Set Aside Entry of Default (#12), arguing that counsel had not received the Court's order of July 3, 2008, and didn't learn of it until preparing a response to Petitioner's motion for default.

On September 22, 2008, Petitioner filed his Motion for Default Judgment (#14), seeking entry of default judgment based on the entry of default. On September 24, 2008, Petitioner responded (#15) to the Motion to Set Aside, arguing that Respondents had a duty to monitor the status of their motion to extend, and permitting a delinquent response would be a violation of equal protection and due process, inasmuch as they would be enforced against Petitioner.

On September 30, 2008, Respondents filed their response to the Motion for Default Judgment, styled as a "Motion to Deny" (#18), arguing that the burden is on Petitioner to show that he is entitled to relief, before habeas relief may issue.

### III. APPLICATION OF LAW TO FACTS

**A. DEFAULT**

Respondents' Answer to the Petition was delinquent, and default has been entered. Thus, this Court must decide whether to set aside the entry of default and address the merits

of the Petition. The Rules Governing Section 2254 Cases do not provide for a default judgment in habeas proceedings. They do, however, permit the Court to apply the Federal Rules of Civil Procedure "to the extent they are not inconsistent with any statutory provisions or these rules." Rules Governing Section 2254 Cases, Rule 11.

In rejecting on due process grounds a district court's refusal to proceed by way of default, the Seventh Circuit summarized the application of default principles in a habeas proceeding.

> A default judgment is a sanction, and a sanction should be proportionate to the wrong. Releasing a properly convicted prisoner or imposing on the state the costs and uncertainties of retrying him, perhaps many years after the offense, is apt to be a disproportionate sanction for the wrong of failing to file a timely motion for an extension of time. This thinking informs the principle that default judgments are disfavored in habeas corpus cases. Habeas corpus is a strong remedy and is therefore reserved... for serious rather than technical violations of rights. The prompt disposition of petitions for habeas corpus is highly desirable, especially given the writ's historic function of protecting the citizen against arbitrary detention, and at some point delay in the disposition of a petition for habeas corpus caused by the government's willfully refusing to file a response might infringe the petitioner's right to due process of law. Yet even when the case is nearing that point, the district court, rather than entering a default judgment, ordinarily should proceed to the merits of the petition, since if the petition has no merit the delay in disposing of it will in the usual case have caused no prejudice to the petitioner. Here the delay was only of weeks, and there is no suggestion that the petitioner was harmed by it. There was no denial of due process.

*Blietner vs. Wellborne,* 15 F.3d 652 (7th Cir. 1994).

Petitioner does not suggest that the Government's default was willful, as opposed to negligent. Moreover, the Court would be obligated to consider *sua sponte* the exhaustion issues. *See* 28 U.S.C. § 2254(b)(1) (exhaustion required to grant petition) and (b)(3) (express waiver of exhaustion required). Further, the Court would have discretion to consider the procedural default and timeliness defenses *sua sponte*. *See* Day v. McDonough 547 U.S. 198, 209 (2006) ("district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition"); and *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir.1998) (procedural default raised *sua sponte).* If the Petition survived the defenses, the Court would then be required to address the merits. Thus, the only effect of proceeding

by way of default would be requiring the Court to address the Petition without the benefit of the Answer.

Here, the delay by Respondents in filing their Answer was a matter of weeks, and there is no suggestion that Petitioner was harmed by the delay.  Under these circumstances, the appropriate course would be to set aside the default and proceed to address the merits of the Petition, Answer and Reply.

Accordingly, the denial of Petitioner's motions seeking default judgment, and a grant of the motion to set aside will be recommended, and the undersigned will proceed to address the merits.

**B.  STATUTE OF LIMITATIONS**

Respondents argue that the petition is untimely.

**Normal Running of Statute** - Congress has provided a 1-year statute of limitations for all applications for writs of habeas corpus filed "by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d).   The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. *See Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007).  Here, Petitioner's first PCR proceeding was pending until January 23, 2006 when the Arizona Supreme Court denied the petition for review.[1]  (Exhibit G.)   Respondents contend this marks the conclusion of Petitioner's direct review and the commencement of his one year limitations period. (Answer, #13 at 4.)

However, "direct review" includes the period within which a petitioner can file a

---

[1] This would apply to Petitioner's 1999 conviction as well, because he was sentenced in 2003 and challenged that judgment in his PCR proceeding.  *See Burton v. Stewart*, 549 U.S. 147 (2007) ("the sentence is the judgment").

1    petition for a writ of certiorari with the United States Supreme Court, whether or not the

2    petitioner actually files such a petition. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th

3    Cir.1999). Petitioner had 90 days after entry of the Arizona Supreme Court's order denying

4    review to file such petition, or until April 23, 2006. *See* U.S.S.Ct. R. 13(1).

5       The limitations period would have begun running thereafter, and expired in April,

6    2007. Ordinarily, that would mean that his February, 2008 habeas petition was over ten

7    months delinquent.

8       **Statutory Tolling** - However, Petitioner is entitled to statutory tolling pursuant to 28

9    U.S.C. § 2244(d)(2) for all the time that a "properly filed application for State

10    post-conviction or other collateral relief with respect to the pertinent judgment or claim is

11    pending."

12       Arguably, Petitioner's second PCR proceeding has been pending since his September

13    2, 2004 notice (Exhibit I), and remains pending because it has never been dismissed. To the

14    extent that there is a dispute as to the status of this proceeding, Respondents bear the burden

15    of establishing this affirmative defense. *See Fruit and Vegetable Packers and Warehousemen*

16    *Local 760 v. Morley,* 378 F.2d 738, 746 (9th Cir. 1967) ("bar of a statute of limitations is an

17    affirmative defense [and proponents] were thus required to prove every element of the

18    defense"). The Respondents "presumption" that it was dismissed is not proof.

19       Even if that proceeding were shown to have been dismissed prior to the judgment

20    becoming final on April 23, 2006, Petitioner's fourth PCR petition was pending from

21    November 8, 2006 until November 2, 2007, when the petition for review was denied. As of

22    November 8, 2006, 109 days of Petitioner's one year had expired. Accordingly, Petitioner

23    had 256 days after November 2, 2007, or until July 15, 2008 to file his habeas petition.

24    Therefore, Petitioner was timely when he filed his habeas petition on February 7, 2008.

25       **Fourth PCR"Properly Filed"** - Respondents argue that Petitioner is not entitled to

26    tolling for this proceeding because it was "untimely." (Answer, #13 at 4.) In *Pace v.*

27    *DiGuglielmo*, 544 U.S. 408 (2005), the Court held that when a state post-conviction petition

28    is untimely under state law, then it is not "properly filed" within the meaning of § 2244(d)(2)

1    and is not eligible for statutory tolling.  However, Petitioner's fourth PCR proceeding was

2    dismissed on the basis that the ineffective assistance of counsel claims were precluded by

3    failure to raise them in earlier proceedings, and his claim under *Blakely* was without merit

4    because he had been sentenced to presumptive terms.  Only the former reason was on the

5    basis that the PCR petition was not "properly filed."

6              The general timeliness requirement in Arizona is that the PCR notice "be filed within

7    ninety days after the entry of judgment and sentence or within thirty days after the issuance

8    of the order and mandate in the direct appeal, whichever is the later."  Ariz. R. Crim. P.

9    32.4(a).   Petitioner's fourth PCR proceeding did not meet this deadline.   However,

10   Petitioner's fourth PCR proceeding was permissible because it asserted a claim under  Rule

11   32.1(g) which authorizes PCR claims based on "a significant change in the law that if

12   determined to apply to defendant's case would probably overturn the defendant's conviction

13   or sentence."  Arizona's timeliness rule provides an exception for such claims.   The rule

14   provides that "[a]ny notice not timely filed may only raise claims pursuant to Rule 32.1(d),

15   (e), (f), (g) or (h)."

16             Indeed the PCR court's order provided:

17                     Rule 32.4(a), Arizona Rules of Criminal Procedure, provides that any
                       notice not timely filed may only raise claims pursuant to Rule 32.l(d),
18                     (e), (f), (g) or (h)

19   (Exhibit M, M.E. 11/20/06 at 1.)  The PCR court proceeded to determine that *Blakely* was

20   simply not applicable to the facts of the case.  The court concluded:

21                     He was sentenced to the presumptive terms on all convictions.  *Blakely*
                       does not apply to presumptive sentences.
22
     (*Id.* at 2 (citations omitted).)[2]
23

24   _____

25          [2]  It is true that the effect of a timeliness ruling is not altered because the court
     considers the merits of the claim as part of the application of the timeliness rule, nor because
26   it offers an alternative basis for its ruling based on another ground.  *Bonner v. Carey*, 425
     F.3d 1145, 1148-49 (9th Cir. 2005) (citing *Pace*).  Here, however, the merits determination
27   of the *Blakely* claim was not merely part of the timeliness determination, nor an alternative
     to it.  Rather, it was a subsequent determination after application of Rule 32.1(g), and
28   determination that it was not subject to the timeliness rule.

1    At first blush, the PCR court's reference to the timeliness rule seems to resolve the

2 matter. However, the reference to Rule 32.1(g) clarifies that the petition was not dismissed

3 in its entirety as untimely. It might be argued that when the PCR court found that Petitioner

4 was not entitled to relief because *Blakely* was inapplicable, the court was then required to

5 find that his petition was untimely. If Rule 32.1(g) described a claim based on "a significant

6 change in the law" that *is* "determined to apply to defendant's case," then the argument

7 would have merit. The determination of the retroactivity question would thus be a limitation

8 on claims falling within the scope of Rule 32.1(g). The Rule does not do so. Rather, it

9 authorizes claims based on "a significant change in the law that *if* determined to apply"

10 would change the result.

11    In *State v. Slemmer*, 170 Ariz. 174, 823 P.2d 41 (1991), the Arizona courts addressed

12 the application of Rule 32.1(g) in the context of its other application, to excusing compliance

13 with the state's preclusion bar.

> When a new principle of law is articulated, a defendant whose
> conviction has become final **may seek relief** under Rule 32. That
> defendant is insulated from the rules of finality and preclusion when,
> as the rule contemplates, there "has been a significant change in the law
> applied in the process which led" to conviction or sentence. Whether
> **relief may be obtained** under Rule 32 then depends on the question of
> retroactive application of the new principle of law. That question is to
> be determined by the standards contained in this opinion.

*Slemmer*, 170 Ariz. at 184, 823 P.2d at 51 (emphasis added). Thus, *Slemmer* clarifies that

application of the new law is not a precondition to a claim fitting within Rule 32.1(g) (or the

procedural exceptions for such claims), but a precondition to relief on such a claim. The

assertion of the change in the law entitled the petitioner to "seek relief"; the applicability

merely determined whether the "relief may be obtained." *See also State v. Towery*, 204 Ariz.

386, 64 P.3d 828 (2003) (denying, rather than dismissing as precluded, a claim based on new

law found to not apply retroactively).

    **Summary re Timeliness** - Petitioner's conviction became final on April 23, 2006,

when his time to seek certiorari review expired. His fourth PCR proceeding remained

pending from November 20, 2006 until November 2, 2007, leaving Petitioner until May 5,

1  2008 to file his habeas petition.  Accordingly, the February 7, 2008 petition was timely.[3]

2

3  **C. EXHAUSTION/PROCEDURAL DEFAULT**

4      Respondents next contend that Petitioner's claims are unexhausted and procedurally

5  defaulted, and thus must be dismissed with prejudice.

6

7  **1. Exhaustion Requirement**

8      Generally, a federal court has authority to review a state prisoner's claims only if

9  available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)

10  (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28

11  U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to

12  show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104

13  (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

14      Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

15  raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-

16  conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir.

17  1994).   Only one of these avenues of relief must be exhausted before bringing a habeas

18  petition in federal court.   This is true even where alternative avenues of reviewing

19  constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211

20  (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

21  1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona

22  state prisoners are exhausted for purposes of federal habeas once the Arizona Court of

23  Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir.

24  2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

25      Respondents argue that *Swoopes* was implicitly overruled in *Baldwin v. Reese*, 541

26  ─────────────────

27      [3]  Because it would not affect the outcome, the undersigned does not attempt to
resolve whether (in the absence of any evidence to the contrary) Petitioner's second PCR
28  petition must be considered to remain pending until the present.

U.S. 27, 29 (2004).  (Answer, #13 at 6-7.)  *Castillo, supra*, was decided after *Baldwin*, and thus must be seen as a reaffirmation of *Swoopes* despite *Baldwin*.  Moreover, Respondents' substantive argument ignores that *Swoopes* is based on the fact that the Arizona Supreme Court's review in non death or life cases is not merely discretionary, but something which the Arizona Supreme Court has directed that the federal courts consider unavailable for exhaustion purposes.  It is out of deference to the state court's pronouncement that the federal courts have consistently applied the rule of *Swoopes* for almost 10 years, including 5 years since *Baldwin*, and the Arizona Supreme Court has yet to suggest that *Swoopes* was a misreading of the Arizona Supreme Court's position.  Thus, this Court must continue to apply the *Swoopes* rule as expressed in *Castillo*, and find that presentation to the Arizona Court of Appeals is sufficient.

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

Because "state and federal courts are jointly responsible for the enforcement of federal constitutional guarantees," "for purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."  *Peterson v. Lampert,* 319 F.3d 1153, 1158 (9th Cir. 2003).  However, a "daisy chain-which depends upon a case that was cited by one of the cases that was cited by one of the cases that petitioner cited is too lengthy to meet [the] standards for proper presentation of a federal claim."  *Howell v. Mississippi*, 543 U.S. 440, 443-444 (2005).

A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of

1    exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see*

2    *also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte*

3    consideration of an issue satisfies exhaustion).

4    **Ground 1** - In Ground 1 of his Petition, Petitioner argues that his due process rights

5    were violated when the sentencing court failed to take account of mitigating factors presented

6    at sentencing.  Petitioner argues he presented this claim in his first PCR petition. (Petition

7    #1 at 6.)  However, Petitioner's challenge to the calculation of his sentence in the first PCR

8    proceeding was limited to an argument that the failure to give him credit for time served on

9    probation was a violation of the federal Sentencing Reform Act of 1984.  No due process

10   challenge was asserted, and no claim made that mitigating factors were ignored. This claim

11   was never fairly presented, and is unexhausted.

12   **Ground 2** - For his Ground 2, Petitioner argues the failure to give him credit for time

13   served on probation was a violation of the federal sentencing guidelines.  This claim was

14   raised as "Claim 1" in Petitioner first PCR petition.  In his Petition for Review to the Arizona

15   Court of Appeals, Petitioner shifted his argument slightly to indicate that he was not

16   engrafting federal law with no connection to state law, but was applying the Sentencing

17   Reform Act of 1984 which he argued "has become a well established procedure of the State

18   over the last 20 years."  Even with this distinction, the undersigned finds that Petitioner did

19   fairly present this claim to the state courts and has successfully exhausted his state remedies.

20   **Ground 3** - For his Ground 3, Petitioner argues that to the extent that it denies credit

21   for time served on probation, Ariz. Rev. Stat. § 13-901(A) violates the 1984 Sentencing

22   Reform Act as interpreted by the U.S. Supreme Court, and is therefore unconstitutional.

23   Petitioner asserts he raised this argument in his third PCR petition. (Petition, #1 at 8.)

24   However, no such claim was included in that petition. (*See generally* Exhibit J.)  A similar

25   claim was presented in his first PCR proceeding, as discussed above in connection with

26   Ground 2.    However, Petitioner never extended that argument to asserting that a

27   constitutional violation was involved, nor did he identify §13-901(A) as a target of his claim.

28   Indeed, the only state statute he cited was Ariz. Rev. Stat. § 13-903. (*See* Exhibit H, PFR at

4-6.)  Accordingly, the undersigned finds that this claim was never fairly presented and is unexhausted.

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a),  and do not reference its timeliness bar set out in Ariz. R. Crim. P.  32.4(a) to establish the procedural defaults.  (Answer, #13 at 9.)  Because of the limited development of Arizona law on the exception to the preclusion bar for claims of "sufficient constitutional magnitude," *see Stewart v. Smith,* 536 U.S. 856 (2002), and the applicability of clear timeliness bars, the undersigned does not reach Respondents' argument on the applicability of the preclusion bar.

**Remedies by Direct Appeal** - Because Petitioner pled guilty, he is not entitled to file a direct appeal.  A.R.S. § 13-4033(B); Ariz. R. Crim. P. 17.1(e).  Accordingly, direct appeal is no longer available for Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357

(App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to his equal protection claim.   Nor does it appears that such exceptions in Rule 32.1 would apply to this claim.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.   Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Paragraph (f) has no application where the petitioner filed a timely notice of appeal or had no right to appeal, and the notice of post-conviction relief of-right applies only to first petitions filed within 90 days following a judgment based on a guilty or *nolo contendre* plea.

1   *See* Ariz.R.Crim.P. 32.1 (defining when petition of-right).  Paragraph (g) has no application

2   because Petitioner has not asserted a change in the law occurring since his last state PCR

3   petition.  Finally, paragraph (h), concerning claims of actual innocence, has no application

4   to Petitioner's procedural claims.

5        Accordingly, the undersigned must conclude that review through Arizona's post-

6   conviction relief process is no longer possible for Petitioner's unexhausted claims.

7        **Summary re Procedural Default** - Petitioner has failed to exhaust his claims in

8   Grounds 1 and 3 of the Petition, and would now be procedurally barred from doing so.

9   Accordingly, these claims are procedurally defaulted.  Petitioner has not preferred a showing

10   of cause and prejudice or actual innocence to excuse his procedural default, and therefore

11   these claims must be dismissed with prejudice.

12

13   **D.  MERITS OF GROUND 2**

14        For his Ground 2, Petitioner argues the failure to give him credit for time served on

15   probation was a violation of the federal sentencing guidelines.

16        The Sentencing Reform Act of 1984 created the United States Sentencing Guidelines

17   Commission and instructed it to establish the United States Sentencing Guidelines.  *See* 28

18   U.S.C. § 991 *et seq*.   The Commission's task was to "establish sentencing policies and

19   practices for the *Federal* criminal justice system." 28 U.S.C. § 991(b)(1) (emphasis added).

20   The Commission was instructed to "promulgate and distribute" the guidelines to "all courts

21   of the United States."  28 U.S.C. § 994(a).

22        No provision was made for application of the guidelines in state courts.  Indeed, it has

23   even been held that the Sentencing Guidelines do not apply when the federal court is acting

24   as a territorial court and applying local law.  *See Government of Virgin Islands v. Dowling*,

25   866 F.2d 610, 614 (3rd Cir. 1989) ("the legislative history is replete with references to

26   'Federal system,' 'Federal judges,' 'Federal offenders,' 'Federal criminal cases,' 'Federal

27   criminal justice system,' 'Federal Courts,' 'Federal sentencing law.'").

28        Petitioner argues that the Arizona courts have nonetheless applied the Federal

1    sentencing guidelines.  Petitioner points to no instance of such, and Arizona law does not

2    provide for it.  While the Arizona courts may look to Federal sentencing law for instruction

3    or comparison, they have regularly rejected any attempt to engraft the Federal guidelines into

4    the state's criminal process.  *See e.g. State v. Wagner,* 194 Ariz. 310, 313, 982 P.2d 270, 273

5    (1999) (rejecting claim that any sentencing guidelines were required in state prosecution);

6    *State v. Monaco*, 207 Ariz. 75, 78, 83 P.3d 553, 556 (Ariz. App. 2004) ("Although Arizona's

7    sentencing statutes resemble the federal sentencing scheme by requiring a mandatory

8    minimum sentence for drug-related offenses, Arizona allows for a much broader discretion

9    within its sentencing range."); *State v. Estrada,* 210 Ariz. 111, 127, 108 P.3d 261, 277 (Ariz.

10   App. 2005) (Kessler, J., dissenting) ("The federal system is distinctly different from

11   Arizona's sentencing system."); and *State v. Berger,*  212 Ariz. 473, 485, 134 P.3d 378, 390

12   (2006) ("While the Arizona Legislature is free to set its own sentencing ranges, of course,

13   the federal sentences are set by a professional Sentencing Commission.").

14          Moreover, even if the Arizona state courts or legislature chose to apply the Federal

15   sentencing guidelines, that decision would be a matter of state law and would not amount to

16   a creation of Federal law.  A "district court shall entertain an application for a writ of habeas

17   corpus in behalf of a person in custody pursuant to the judgment of a State court only on the

18   ground that he is in custody in violation of the Constitution or laws or treaties of the United

19   States." 28 U.S.C. § 2254.  Further, a state court determination of state law is not subject to

20   review in a federal habeas court.  *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000)

21   ("federal court is bound by the state court's interpretations of state law").

22          Finally, even if Petitioner could somehow show that he was entitled to application of

23   the Federal sentencing guidelines, and that failure to do so was a violation of Federal law,

24   he would not have been entitled to the relief he seeks under those guidelines.  They expressly

25   provide:

26                  Upon revocation of probation, no credit shall be given (toward any
                    sentence of imprisonment imposed) for any portion of the term of
27                  probation served prior to revocation.

28   U.S.S.G. § 7B1.5(a).  *See U.S. v. Verbeke,* 853 F.2d 537, 540 (7th Cir.  1988) ("While on

1    probation, [defendant] was not in custody in connection with the offense for which sentence

2    was imposed. Since [defendant] was not in custody, he is not entitled to receive credit for

3    time served.").

4           Accordingly, Petitioner's Ground 2 is without merit and should be denied.

5

6                                **IV.  RECOMMENDATION**

7           **IT IS THEREFORE RECOMMENDED** that Grounds 1 and 3 of the Petitioner's

8    Petition for Writ of Habeas Corpus, filed February 7, 2008 (#1) be **DISMISSED WITH**

9    **PREJUDICE**.

10          **IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for

11   Writ of Habeas Corpus, filed February 7, 2008 (#1) be **DENIED**.

12

13                          **V. EFFECT OF RECOMMENDATION**

14          This recommendation is not an order that is immediately appealable to the Ninth

15   Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

16   *Appellate Procedure*, should not be filed until entry of the district court's judgment.

17          However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

18   have ten (10) days from the date of service of a copy of this recommendation within which

19   to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing

20   Section 2254 Proceedings.   Thereafter, the parties have ten (10) days within which to file

21   a response to the objections.   Failure to timely file objections to any factual or legal

22   determinations of the Magistrate Judge will be considered a waiver of a party's right to *de*

23   *novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

24   Cir. 2003)(*en banc*).

25

26   DATED: May 12, 2009                    _____

27                                                          JAY R. IRWIN
                                            United States Magistrate Judge

28

- 17 -